IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA

NEUROCARE INSTITUTE OF CENTRAL FLORIDA, P.A., a Florida professional association, individually and as the representative of a class of similarly-situated persons,

Plaintiff,

v.

PHYSICIANS COOPERATIVE INSURANCE SERVICES, LLC d/b/a THE PHYSICIANS GROUP, HAN KIM, and JOHN DOES 1-12,

Defendants.

Case No.: 6:13-cv-1231-Orl-36TBS

## CLASS ACTION COMPLAINT

Plaintiff, NEUROCARE INSTITUTE OF CENTRAL FLORIDA, P.A. ("Plaintiff"), brings this action on behalf of itself and all other persons similarly situated, through its attorneys, and except as to those allegations pertaining to Plaintiff or its attorneys, which allegations are based upon personal knowledge, alleges the following upon information and belief against Defendants, PHYSICIANS COOPERATIVE INSURANCE SERVICES, LLC d/b/a THE PHYSICIANS GROUP, HAN KIM and JOHN DOES 1-12 collectively ("Defendants"):

## PRELIMINARY STATEMENT

1. This case challenges Defendants' practice of faxing unsolicited advertisements.

2. The federal Telephone Consumer Protection Act, 47 USC § 227 (the "TCPA"), prohibits a person or entity from faxing or having an agent fax advertisements without the recipient's prior express invitation or permission ("junk faxes" or "unsolicited faxes"). Moreover, the TCPA mandates that when a person or entity sends an advertisement by fax it must always include a very specific opt-out notice that is clearly and conspicuously included on the first page of the advertisement. *See* 47 U.S.C. § 227 (b) (2) (D); and 47 C.F.R. § 64.1200 (a) (4) (iii). The TCPA provides a private right of action and provides statutory damages of $500 - $1,500 per violation.

3. Unsolicited faxes damage their recipients. A junk fax recipient loses the use of its fax machine, paper, and ink toner. An unsolicited fax wastes the recipient's valuable time that would have been spent on something else. A junk fax interrupts the recipient's privacy. Unsolicited faxes prevent fax machines from receiving authorized faxes, prevent their use for authorized outgoing faxes, cause undue wear and tear on the recipients' fax machines, and require additional labor to attempt to discern the source and purpose of the unsolicited message.

4. On behalf of itself and all others similarly situated, Plaintiff brings this case as a class action asserting claims against Defendants under the TCPA and the common law of conversion.

5. Plaintiff seeks an award of statutory damages for each violation of the TCPA.

## PARTIES, JURISDICTION AND VENUE

6. Plaintiff is a Florida professional association with its principal place of business in Winter Park, Seminole County, Florida.

7. Defendant, PHYSICIANS COOPERATIVE INSURANCE SERVICES, LLC d/b/a THE PHYSICIANS GROUP ("Physicians Group"), is a limited liability corporation with its principal place of business in Beverly Hills, California.

8. Upon information and belief, Defendant HAN KIM is an owner, officer, director, or manager of defendant Physicians Group.

9. Plaintiff sued Defendants John Does 1-12 because although the subject fax advertises the goods, products or services of defendant Physicians Group, it is not clear what additional entities or persons actively participated in the transmission of the subject fax advertisement, or benefitted from the transmissions.

10. This Court has subject matter jurisdiction under 28 U.S.C. § 1331 and 47 U.S.C. § 227.

11. Venue is proper in the Middle District of Florida because Defendants committed a statutory tort within this district and a significant portion of the events took place here.

## FACTS

12. On or about August 15, 2012, Plaintiff received an unsolicited fax advertisement. Exhibit A, copy of the subject fax advertisement.

13. The subject fax advertises the goods, products or services of defendant Physicians Group. Exhibit A. Defendants sent, or caused, this unsolicited fax advertisement to be sent to Plaintiff and a class of similarly situated persons.

14. Upon information and belief, defendant Han Kim actively participated in Defendants' scheme to send the subject unsolicited fax advertisement to persons without first obtaining their express permission in that he actively participated in drafting the subject fax, actively participated in determining where the subject fax would go, and/or actively participated in transmitting the subject fax.

15. Plaintiff did not invite or give permission, to anyone, to send Exhibit A to it.

16. The subject fax does not contain a clear and conspicuous opt-out notice. Instead, Defendants included an opt-out notice that was in small font located at the very bottom of the page. Exhibit A. Additionally, the opt-out notice did not include information that failure by Defendants to comply with an opt-out request within 30 days is unlawful as required by the TCPA. Id. Moreover, the opt-out notice did not contain a domestic toll free fax number as required by the TCPA. Id.

17. On the face of the subject fax, it is not understood whether the telephone number identified in the notice was available to Plaintiff to make an opt-out request 24 hours a day, 7 days a week.

18. On information and belief, Defendants sent the same facsimile to Plaintiff and more than thirty-nine other recipients without first receiving the recipients' express permission or invitation. This is based, in part, on the fact that

the subject fax does not address Plaintiff, Plaintiff never gave permission to anyone to send the subject fax advertisement to it, that Defendants are located in California, and that sending advertisements by fax is a very inexpensive way to reach a wide audience.

19. There is no reasonable means for Plaintiff (or any other putative Class member) to avoid receiving illegal faxes. Fax machines are left on and ready to receive the urgent communications their owners desire to receive.

**CLASS REPRESENTATION ALLEGATIONS**

20. This action is brought and may properly be maintained as a class action pursuant to Fed. R. Civ. P. 23. This action satisfies the numerosity, commonality, typicality, adequacy requirements under Rule 23 (a). Additionally, prosecution of Plaintiff's claims separately from the putative class's claims would create a risk of inconsistent or varying adjudications under Rule 23 (b) (1) (A). Furthermore, the questions of law or fact that are common in this action predominate over any individual questions of law or fact making class representation the superior method to adjudicate this controversy under Rule 23 (b) (3).

21. Plaintiff brings this action as a class action on behalf of himself and all others similarly situated as members of the Class, initially defined as follows:

> All persons who were sent one or more telephone facsimile messages on or after four years prior to the filing of this action, that advertised the commercial availability of property, goods, or services offered by "The Physicians Group", that did not contain an opt-out notice that complied with federal law.

22. Excluded from the Class are Defendants, any entity in which Defendants have a controlling interest, any officers or directors of Defendants, the legal representatives, heirs, successors, and assigns of Defendants, and any Judge assigned to this action, and his or her family.

23. <u>**Numerosity/Impracticality of Joinder**</u>: On information and belief, the Class consists of more than thirty-nine people and, thus, is so numerous that joinder of all members is impracticable. The precise number of Class members and their addresses are unknown to Plaintiff, but can be obtained from Defendant's records or the records of third parties.

24. <u>**Commonality and Predominance**</u>: There is a well-defined community of interest and common questions of law and fact that predominate over any questions affecting only individual members of the Class. These common legal and factual questions, which do not vary from one Class member to another, and which may be determined without reference to the individual circumstances of any Class member, include, but are not limited to the following:

a. Whether Defendants sent unsolicited fax advertisements;

b. Whether <u>Exhibit A</u> advertised the commercial availability of property, goods or services;

c. The manner and method Defendants used to compile or obtain the list of fax numbers to which they sent <u>Exhibit A</u> and other unsolicited fax advertisements;

d. Whether Defendants faxed advertisements without first obtaining the recipients' express permission or invitation;

e. Whether Defendants' opt-out notice violated the TCPA;

f. Whether Defendants' opt-out notice was clear and conspicuous;

g. Whether Defendants' opt-out notice contained telephone and facsimile numbers that were available to Plaintiff and the other Class members 24 hours a day, 7 days a week;

h. Whether Plaintiff and the other Class members are entitled to statutory damages;

i. Whether Defendants should be enjoined from faxing advertisements in the future;

j. Whether the Court should award trebled damages; and

k. Whether Defendant's conduct as alleged herein constituted conversion.

25. **Typicality of claims**: Plaintiff's claims are typical of the claims of the Class because Plaintiff and all Class members were injured by the same wrongful practices. Plaintiff and the members of the Class are all individuals who received unsolicited fax advertisements from Defendants that also did not contain the proper opt-out clause under the TCPA. Under the facts of this case, because the focus of the conduct is upon Defendants' conduct, if Plaintiff prevails on its claims, then the putative Class members must necessarily prevail as well.

26. Adequacy of Representation: Plaintiff is an adequate representative of the Class because its interests do not conflict with the interest of the members of the Class it seeks to represent. Plaintiff has retained counsel competent and experienced in complex class action litigation and Plaintiff intends to vigorously prosecute this action. The interest of members of the Class will be fairly and adequately protected by Plaintiff and its counsel.

27. Prosecution of Separate Claims Would Yield Inconsistent Results: Even though the questions of fact and law in this action are predominately common to Plaintiff and the putative Class members, separate adjudication of each Class member's claims would yield inconsistent and varying adjudications. Such inconsistent rulings would create incompatible standards for Defendants to operate under if/when Class members bring additional lawsuits concerning the same unsolicited fax advertisements of if Defendants choose to advertise by fax again in the future.

28. Class Action is the Superior Method to Adjudicate the Common Questions of Law and Fact that Predominate: A class action is superior to other available methods for the fair and efficient adjudication of this lawsuit, because individual litigation of the claims of all Class members is economically unfeasible and procedurally impracticable. The likelihood of individual Class members prosecuting separate claims is remote, and even if every Class member could afford individual litigation, the court system would be unduly burdened by individual litigation of such cases. Plaintiff knows of no difficulty to be encountered in the

management of this action that would preclude its maintenance as a class action. Relief concerning Plaintiff's rights under the laws herein alleged and with respect to the Class would be proper. Plaintiff envisions no difficulty in the management of this action as a class action.

**COUNT I**
**TELEPHONE CONSUMER PROTECTION ACT, 47 U.S.C. § 227**

29. Plaintiff incorporates the preceding paragraphs as though fully set forth herein.

30. Plaintiff brings Count I on behalf of itself and a class of similarly situated persons.

31. The TCPA prohibits the "use of any telephone facsimile machine, computer or other device to send an unsolicited advertisement to a telephone facsimile machine…." 47 U.S.C. § 227 (b) (1).

32. The TCPA defines "unsolicited advertisement," as "any material advertising the commercial availability or quality of any property, goods, or services which is transmitted to any person without that person's express invitation or permission." 47 U.S.C. § 227 (a) (4).

33. The TCPA provides:

> 3. Private right of action. A person may, if otherwise permitted by the laws or rules of court of a state, bring in an appropriate court of that state:
>
> > (A) An action based on a violation of this subsection or the regulations prescribed under this subsection to enjoin such violation,

> (B) An action to recover for actual monetary loss from such a violation, or to receive $500 in damages for each such violation, whichever is greater, or
>
> (C) Both such actions.

34. The Court, in its discretion, can treble the statutory damages if the violation was knowing. 47 U.S.C. § 227.

35. In relevant part, the TCPA states that "[t]he Commission shall prescribe regulations to implement the requirements of this subsection . . . in implementing the requirements of this subsection, the Commission shall provide that a notice contained in an unsolicited advertisement complies with the requirements under this subparagraph only if . . . (i) the notice is clear and conspicuous . . ." 47 U.S.C. § 227 (b) (2) (D) (i).

36. Additionally, "a notice contained in an unsolicited advertisement complies with the requirements under this subparagraph only if . . . (ii) the notice states that the recipient may make a request to the sender of the unsolicited advertisement not to send any future unsolicited advertisements to a telephone facsimile machine or machines and that failure to comply, within the shortest reasonable time, as determined by the Commission, with such a request meeting the requirements under subparagraph (E) is unlawful . . ." 47 U.S.C. § 227 (b) (2) (D) (ii). The shortest reasonable time has been determined to be thirty (30) days. 47 C.F.R. § 64.1200 (a) (4) (iii) (B).

37. The opt-out notice must also include "a domestic contact telephone and facsimile machine number for the recipient to transmit such a request to the sender." 47 U.S.C. § 227 (b) (2) (D) (iv) (I).

38. Moreover, "a notice contained in an unsolicited advertisement complies with the requirements under this subparagraph only if . . . (v) the telephone and facsimile machine numbers and the cost-free mechanism . . . permit an individual or business to make such a request at any time on any day of the week." 47 U.S.C. § 227 (b) (2) (D) (v).

39. Defendants violated 47 U.S.C. § 227 et seq. by sending advertisements by fax (Exhibit A) to Plaintiff and the other Class members without first obtaining their prior express invitation or permission.

40. Defendants violated 47 U.S.C. § 227 et seq. by not providing a clear and conspicuous opt-out notice. The notice that Defendants did include was in small font at the very bottom of the page. Exhibit A. Additionally, it is not clear whether Defendants provided telephone and facsimile numbers that allowed Plaintiff and the Class members to make an opt-out request at any time on any day of the week.

41. Defendants violated 47 U.S.C. § 227 et seq. by not including in the opt-out notice that Defendants were to comply with any opt-out request within thirty days, or their conduct would be considered unlawful. Furthermore, Defendants violated 47 U.S.C. § 227 et seq. by not including a domestic facsimile number for the recipients to make an opt-out request.

42. Facsimile advertising imposes burdens on unwilling recipients that are distinct from the burden imposed by other types of advertising. The content of the required opt-out notice is designed to ensure that the recipients have the necessary contact information to opt-out of future fax transmissions. If senders do not clearly and conspicuously provide the opt-out content to the recipients, then the senders fail to enable the recipients with the appropriate information to stop the burdens imposed by this form of advertisement.

43. The TCPA is a strict liability statute and Defendants are liable to Plaintiff and the other Class members even if their actions were negligent.

44. Moreover, Defendants are liable to Plaintiff and the other Class members under the TCPA for including an improper opt-out notice even if Defendants ultimately prove that they obtained prior express permission to send the advertisements by fax or prove that Defendants had an established business relationship with Plaintiff and the other Class members.

45. Defendants knew or should have known that Plaintiff and the other Class members had not given express invitation or permission for Defendants or anybody else to fax advertisements about Defendants' goods, products, or services, that Plaintiff and the other Class members did not have an established business relationship with Defendants, that Exhibit A is an advertisement, and that Exhibit A and the other advertisements Defendants sent did not display the proper opt-out notice as required by the TCPA. Exhibit A.

46. Defendants' actions caused damages to Plaintiff and the other Class members. Receiving Defendants' junk faxes caused the recipients to lose paper and toner consumed in the printing of Defendants' faxes. Moreover, Defendants' faxes used Plaintiff's and the Class's fax machines. Defendants' fax cost Plaintiff time, as Plaintiff and its employees wasted their time receiving, reviewing and routing Defendants' illegal faxes. That time otherwise would have been spent on Plaintiff's business activities. Defendants' faxes unlawfully interrupted Plaintiff's and the other Class members' privacy interests in being left alone. Finally, the injury and property damage sustained by Plaintiff and the other Class members from the sending the subject faxes occurred outside Defendants' premises.

47. Even if Defendants did not intend to cause damage to Plaintiff and the other Class members, did not intend to violate their privacy, and did not intend to waste the recipients' valuable time with Defendants' advertisements, those facts are irrelevant because the TCPA is a strict liability statute.

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, demands judgment in its favor and against Defendants, jointly and severally as follows:

A. That the Court adjudge and decree that the present case may be properly maintained as a class action, appoint Plaintiff as the representative of the class, and appoint Plaintiff's counsel as counsel for the class;

B. That the Court award $500.00-$1,500.00 in damages for each violation of the TCPA;

C. That the Court enter an injunction prohibiting Defendants from engaging in the statutory violations at issue in this action; and

D. That the Court award costs and such further relief as the Court may deem just and proper.

**COUNT II**
**CONVERSION**

48. Plaintiff incorporates paragraphs 1 through 28 as though fully set forth herein.

49. Plaintiff brings Count II on behalf of itself and a class of similarly situated persons.

50. By sending Plaintiff and the other Class members unsolicited faxes, Defendants improperly and unlawfully converted their fax machines, toner and paper to its own use. Defendants also converted Plaintiff's employees' time to Defendants' own use.

51. Immediately prior to the sending of the unsolicited faxes, Plaintiff and the other Class members owned an unqualified and immediate right to possession of their fax machines, paper, toner, and employee time.

52. By sending the unsolicited faxes, Defendants permanently misappropriated the Class members' fax machines, toner, paper, and employee time to their own use. Such misappropriation was wrongful and without authorization.

53. Defendants knew or should have known that its misappropriation of paper, toner, and employee time was wrongful and without authorization.

54. Plaintiff and the other Class members were deprived of the use of their fax machines, paper, toner, and employee time, which could no longer be used for any other purpose. Plaintiff and each Class member thereby suffered damages as a result of their receipt of unsolicited fax advertisements from Defendants.

55. Defendants' unsolicited fax effectively stole Plaintiff's employees' time because persons employed by Plaintiff were involved in receiving, routing, and reviewing Defendants' illegal faxes. Defendants knew or should have known employees' time is valuable to Plaintiff.

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, demands judgment in its favor and against Defendants, jointly and severally as follows:

A. That the Court adjudge and decree that the present case may be properly maintained as a class action, appoint Plaintiff as the representative of the class, and appoint Plaintiff's counsel as counsel for the class;

B. That the Court award appropriate damages;

C. That the Court award costs of suit; and

D. Awarding such further relief as the Court may deem just and proper.

Respectfully submitted,

NEUROCARE INSTITUTE OF CENTRAL FLORIDA, P.A., a Florida professional association, individually and as the representative of a class of similarly-situated persons,

By: /s/ Phillip A. Bock
One of its attorneys

Ryan M. Schmidt (Fla. Bar No. 95731)
Law Offices of Jon B. Coats, Jr., P.A.
1519 Dr. M.L.K., Jr. St. N
St. Petersburg, FL 33704
Telephone: 727-456-4462

Phillip A. Bock (Fla. Bar No. 93895)
Bock & Hatch, LLC
134 North La Salle Street, Suite 1000
Chicago, IL 60602
Telephone: 312-658-5500

# EXHIBIT A



# THE PHYSICIANS GROUP



Brokerage / Consultants

8484 Wilshire Blvd., Suite 430 • Beverly Hills, CA 90211
Phone: 323-592-3424 • Fax: 800-959-9719

"Protection-Investment-Retirement-Ideas"

# REDUCE YOUR MALPRACTICE PREMIUM ON AVERAGE 35 to 40%.

**Guaranteed coverage at the most competitive rates available.**
***"Start saving even if you have already paid your premium."***

**Get your FREE indication today! Fax to 800-959-9719**

| Name of Applicant: | | |
|---|---|---|
| Address: | | |
| Phone Number: | Fax Number: | |
| Practice Name: | Office Manager: | |
| Specialty:<br>Practice Hours/wk: | Years in Practice: | |
| Current Carrier: | Current premium: | Retroactive Date: |
| Claims History: ( )None | ( )#Settled | ( )#Dismissed ( )#Pending |
| (Please list dates and amounts of all claims, attach a separate sheet if necessary) | | |

***We are able to offer these savings due to the following reasons:***

1. A high volume of applications submitted to our carriers.
2. Minimizing costly administrative and billing expenses.
3. Eliminating the surcharge for "High Risk" specialties.
4. Ability to negotiate premiums with the top underwriters of the industry.
5. Direct contracts with carriers; thereby eliminating the middleman.

Access to the top A-rated nationwide carriers ensuring comprehensive coverage at the most competitive rates available.

www.ThePhysiciansGrouponline.com

***Fax number removal, please dial 877-929-9543.***